Good morning and may it please the court, my name is Justin Park and I represent the Citizens Alliance for Property Rights or more commonly known as CAPER. I would like to reserve three minutes for rebuttal. We're here today on CAPER's lawsuit against the City of Duvall for violations of the Clean Water Act and specifically to discuss the decision of the District Court to dismiss that two reasons why that decision ought to be reversed and remanded. The decision itself was arrived at in a little bit of an unusual way. At the conclusion of the motion the court entered an order granting summary judgment. There was a motion for reconsideration filed by CAPER which was actually granted by the court as it overturned its decision and the basis on which it made that decision. However in that same order the court issued granted the motion for summary judgment on an entirely different basis. And there are two reasons I'm going to discuss as to why that new basis is in error. For the first one is procedural. The District Court did an adequate job of identifying for us the two different types of lawsuit that a citizen can bring with regard to an NPDES permit. The first type that it identified was the standard permit violation lawsuit where there's an allegation of pollutants being dumped into waters of the United States. And the District Court correctly reversed its prior decision on that type of lawsuit and denied the motion for summary judgment. The second type of NPDES permit is for a straight violation of the permit. The District Court found in its order that the city of Duval did not present any evidence or present any time at all on that particular type of lawsuit and that therefore the Alliance accordingly did not address that issue either. However then the District Court's final decision was based on its finding that there was not evidence presented from which a trier of fact could find that there was a violation of the NPDES permit. Well those two statements fundamentally contradict one another. If in fact that, and it was in fact the case, that that issue was not presented to the court and not briefed and therefore we should send that one back to be fully briefed and fully discussed with the District Court. The second reason is substantive. The District Court's finding that there was not evidence from which it could find a violation of the NPDES permit is simply in error. The evidence of an unauthorized dumping of stormwater onto the mills property is uncontested. Quite simply the evidence is that there is a pipe that comes into the north end of the mills property that the city's own engineer acknowledged was part of. But the District Court said you presented no evidence of pollutants. Well the District Court didn't make a finding on evidence of pollutants but the NPDES... No, the District Court said that you failed to present evidence that there were any pollutants. We disagree with that that finding as well your honor. The reason being is that the NPDES permit system... I'm sorry, you disagree with it? We did present evidence of pollutants. Can I show you where it is in the brief if you would like? Yes. Specifically and I'll just tell you what it says in the brief on that very issue. Tell me where. Get the brief. Also the District Court said there was no dispute, no evidence presented that the discharge doesn't go into navigable waters. And that decision was the decision the District Court reversed on the motion for reconsideration. The District Court acknowledged that you can have a lawsuit for violation of an NPDES permit. It didn't really reverse, it made a statement inconsistent with that. Well it did in fact reverse that prior decision. It said it made an error of law in that prior decision. Let's go the first time. Where did you dispute the District Court? Well first and foremost I would argue that the District Court did not make a finding that there were no pollutants or that there was no evidence of pollutants. However, the pollutants that were there are those that are found in stormwater in its normal form and that's the reason that the NPDES permit system operates the way that it does. Well go ahead and show me something in your brief where you raise that issue. I was waiting for you to do that. Page 21 of the appellant's brief at the bottom of the page. This is the opening brief of appellant before this court. Page 21 right at the bottom the sentence reads as follows. The alliance goes on to describe how the mills property is being used as an intermittent channel for polluted water as described in the Rapanos v. U.S. decision. But isn't that trumped by the permit itself? Doesn't the permit control? Absolutely the permit controls and the way the NPDES system works is that the evidence of pollutant is not part of that system. The EPA's rules do not require any particular level of pollutants in order for any measurement even of pollutants to have an NPDES permit. And therefore the question is only whether or not the discharge of water from the system, the municipal storm sewer system or MS4 as it's referred to in the permit. The only question is whether or not that water is being discharged, not whether or not that particular discharge contains any particular pollutant. And the reason for that is as was stated by this court in the Environmental Defense Center case. Storm water in and of itself is a major source of water pollution because it carries so many different pollutants. You might have an argument with respect to the storm water moving across this property into the river, but for the fact that there is now a permit which specifically allows it. That certainly allows the city to discharge its MS4 water into the Snoqualmie River. We don't have any debate that that is in fact the case. The question is... I guess I'm lost. What's the particular issue here that's not covered by the permit? Because the city discharges its MS4 water onto the mills property. Right. The water then, and they have no basis for doing that. They don't have an easement. They have a permit to discharge to the waters of the United States. They don't have a permit to discharge to private property. But that's what we're concerned with in federal law. The fact that this happens to impact private rights is a question of state law. You can litigate that with maybe trespass or maybe... But how does that impact... If you're not discharging pollutants into the waters of the United States, or if you're not discharging water permit into the waters of the United States, you don't have a federal crime. The fact that this may involve some violation of state property rights is of no consequence here, is it? Certainly the state law is not of consequence here. The question is, is there a violation of the Clean Water Act? And I would submit to you that the violation of an NPDES permit on its own, regardless of whether there's a discharge or not a discharge, is a federal claim under Section 1365 F7. And that was identified by the district court. Right. If there is a violation of the permit. Correct. But what we've been asking you is, isn't this discharge in conformity with the permit? The discharge to the mills property does not conform to the permit. Why not? Because the mills property is not the waters of the United States, nor is it a location where the city is permitted to discharge its MS4 water. That MS4 water, under the NPDES permit, is allowed to be discharged one place, one place alone, and that is the waters of the United States. There's nothing in there. As a matter of fact, in the permit itself, under Section General Condition G7, I believe it is, specifically states that private property is- But if you don't have a discharge into the waters of the United States, then you- Then you don't have a- You don't have a federal question here. No. We have no jurisdiction. You don't have a violation of 1365F1 if you don't have a discharge to the waters of the United States. But you do have a violation of Section F7, which is when that permit holder violates that permit in any way, the only mechanism available to remedy a violation of that permit is a citizen suit. Only so far as it goes, the water flows in the waters of the United States. If you're telling us this is now going someplace else, then it's not going to the waters of the United States. That's not a federal question. That has nothing to do with us. Under F7, I believe that it does, Your Honor. F7 gives a cause of action for any violation of an NPDES permit, and it is a violation of that permit- Even if the waters don't wind up into the waters of the United States? Well, these waters do end up- There is a nexus to the waters of the United States. This water, the two- There's the north and the south. The southern pipe or the basin that the city has on the mill's property collects water and takes it to the Snoqualmie River. Well, then if this is going to the waters of the United States, it sounds to me like they're doing what the permit allows. In so far as their pipes that are permitted to do so are, but you can't simply use a piece of private property as a part of your system because you want to. That's a question of state law. What federal law governs is getting the water into the waters of the United States. They are doing something that gets these waters in the waters of the United States in accordance with the permit. The fact that along the way it might violate people's state, might commit a trespass or something like that, an easement, that's not a question of federal law. But if that were the case, then Section G7 of the permit wouldn't exist at all, which says that you have to respect the individual property rights that are crossed by this water. That section of the permit does exist. And, in fact, the district court, in its final order in this case, acknowledged that it could not dismiss this case based on its idea that there was this lack of a nexus to the Snoqualmie River because of F7 that exists for just a simple violation of the permit. You're out of time. Why don't we hear from the other side? Good morning, and may it please the Court. Michael Tierney representing the city of Duval. I think what's clear is that we've jumbled together several different concepts here in trying to address the issues in this case, and they don't need to be jumbled together the way they are. I think the simplest starting point is where most of the discussion was just now on what does a Phase 2 permit allow, what does it require of a city, and whether there is a violation of that permit. I think under any type of citizen lawsuit, in fact, I don't think, under any type of citizen lawsuit, one of the elements would be either that the water is being discharged without a permit so that no permit exists, or if it is being discharged under a permit, that there is a violation of the permit that has taken place. And that requires us to look more closely at what a Phase 2 stormwater permit is, what does it require, what constitutes a violation if there's going to be a violation. And it's important to recognize the distinction between a stormwater permit like that and what probably, at least in the case law, is a much more familiar type of NPDES permit violation where you have some sort of sewage treatment or industrial waste treatment. That is a permit that is very driven by the analysis of what's coming out of the end of the pipe. What are the various allowed levels of various types of pollutants, even heat, biological oxygen demand, metals, various things like that. Those can be discharged if they meet the parameters of a permit. A stormwater permit is a much different animal, and there are two types of those. One is the Phase 1 permit, which is for the larger cities, I think over 100,000. That does have some measurables in it, but it also governs a lot of details of the engineering of a system, and most of this is directed at reducing different kinds of runoff. A Phase 2 permit, which is what Duval has, is a permit for smaller jurisdictions. City Duval, I think, is about 20,000, if that much. A Phase 2 permit, the label that's attached to it is called a programmatic permit. The idea of a Phase 2 permit is not the measurement of what's going out of the pipe, but it's the creation of a number of acronyms that go in. Basically, under Washington permits, it's all known and available treatment technologies, ACART, which means are you doing what you can do throughout your system to undertake a program that reduces the amount of pollutants that are getting into stormwater? There is a menu of best management practices that the EPA publishes. Council, what is it in this particular permit that allows the water to run across the mill's property? That's really what we're trying to get down to. Well, and I think that's what I'm trying to get at in that the permit isn't even an animal that addresses that kind of detail in a system. It addresses an overall program that's set forth in a stormwater management plan. It doesn't address the specific engineering of what goes where in a permit. Council, as I understood CAPER's argument, they're saying that they contend that the permit was violated because it allowed or permitted a discharge into navigable waters. But instead, there's a discharge onto their property. There's an intermittent channel. They're saying a discharge onto their property violates the permit. If it doesn't violate the permit, then it's clearly going to be a question of state law. I think it would be. But if it violates the permit, then I guess the Clean Water Act has got to be in the loop. So could you address their argument, CAPER's argument, that there's a permit violation? Yes, Your Honor, and there's a couple parts of that. The first is that the permit just generally permits discharge. That's what it says, and I'm quoting from it. In page 204 of the Supplemental Excerpt of Record, this permit authorizes the discharge of stormwater to surface waters and to groundwaters of the state from MS4s owned and operated by each permittee covered under this permit in the geographic area. That would include the mill's property? That would include the mill's property. All right, that's the point I was trying to get to. And that's the starting point. It's just a general statement that you're allowed to operate your storm sewer system and it's allowed to discharge water. What I think you're getting at, Your Honor, is that is there some language somewhere in that permit? And it's a 60-page document that is being violated. Is there language that says when you make your discharge, it has to be directly into the river? There's two answers to that. No, I don't think it does. The second, which is more to the point of the procedural issues in the case, is we challenged CAPER to show that to the court. We said there is no violation here, and we explained how a Phase II permit operates, and the court in its two orders on both occasions said, this has been put forward to the plaintiff, the non-moving party, that the moving party says there is no violation of the permit. Now it is on you to step forward and show us somewhere in this 60-page permit what provision you are saying was violated. And there was no response from CAPER on that, and that is in the court's two orders. It was just generalities that, well, they can't show why this is allowed, therefore it must be a violation. And the court said that isn't enough. They have come forward with either proof that there was no violation or a challenge to you to make your case, and you have done neither. Therefore, that issue is decided against them. And that's just basically on our rules of summary judgment. That is a sufficient ground for granting the summary judgment. But more to the broader point, it betrays what CAPER is saying as a misunderstanding of the Phase II permitting system, as if it was some sort of engineering manual and saying, well, at each point along the way, we have to show why this segment of the flow of water is specifically allowed under the system. And that isn't what a Phase II permit does. A Phase II permit is basically a requirement that the city has to create some sort of stormwater management plan. And the stormwater management plan is another 70- or 80-page document with a bunch of appendices about construction sites and reducing inflow and infiltration, things like that. That is the point of the permitting system, is to get every city to create these systems that address stormwater runoff. It is not an engineering-type permit such as we see with a sewage treatment plant or something like that. And that's where we're jumbling together different concepts under the Clean Water Act and where the city has to emphasize that this is a different animal here, the Phase II permit is. So, one, they have not stepped forward, and I think the case law is clear that you have to show, I mean, a permit is a technical document almost like a contract. You have to step forward and show where the violation is. What about their claim that it violates a provision that says you respect property rights? Your Honor, I think your comment was very to the point on that, that that is a matter of state law, and honestly, this is my second case. Their argument is that the permit here requires that. That makes it a question of violation of the permit. Well, that's assuming that there is some violation of state law here, and that's a matter that has been litigated previously, and the plaintiff dismissed that case, a case I defended for the city of Duval, where there was an action brought for trespass for, this all goes back to the existence of a wetland on the property that the plaintiffs started to do clearing on years ago. The city brought an enforcement action. There was litigation for that. That was dismissed. A couple years later, this case started, and I submit that this case is in effect the plaintiffs trying to pound a square peg into a round hole and say, well, we didn't win on these state law claims of trespass or lack of an easement or something like that, so let's see if we can turn this into some sort of Clean Water Act case. And I think they're torturing both the facts and the law in order to try to do that. And again, whatever this argument is that's now being raised, I haven't heard this before in this case, whatever it is is an argument under state law that was not presented to the district court, was not presented in any of the briefing, and there was no citation anywhere in the record to that portion of the permit. And I see my time is up. No more questions? I will sit down. Thank you. Very briefly, Your Honors, Justice Scanlon pointed out the point in the permit that talks about they can discharge water to waters of the state of Washington or to waters of the United States. The permit does not say they can discharge water to private property, and that's what they're doing here. So why is it a violation of the permit as opposed to a violation of state law? It may also be a violation of state law, but CAPER can't bring that claim. Why is it a violation of the permit? It's a violation of the permit because the permit does control the discharge of this water. In the Environmental Defense Council case versus the EPA where the Ninth Circuit was ruling on whether or not the rulemaking around this Phase II permit was correct. Does the permit say you shall not discharge pollutants onto the land of so-and-so? No, the permit says you can discharge to waters of the state or waters of the United States. Okay, so? And there's no proof that the mills property is waters of the state. It's the mills property. It's a path towards waters of the United States. The permit simply may not speak to other things. It allows discharge into the waters of the United States. It sounds to me like it doesn't speak at all about the mills property. It doesn't speak at all about that. Well, the permit does speak about private property in general. It does not speak about the mills property in specific. That is correct. But if you go with that analysis and agree with the city that all that the permit is requiring is paperwork, then there can never be an illicit or unauthorized discharge because discharges aren't controlled by that permit. But that's not what the permit says. The permit says you can only discharge to waters of the state, waters of the United States. These are polluted waters. The whole point of the Clean Water Act is to control them. If we're not going to have this permit control polluted waters, then we may as well toss it out entirely. It has no meaning whatsoever. Okay, thank you. The case is argued. We're adjourned.
judges: Kozinski, O'scannlain, Gould